**PETERSON et al. v. ICKES, Secretary of the Interior, et al.**

**No. 8911.**

United States Court of Appeals
District of Columbia.

Argued May 7, 1945.

Decided July 2, 1945.

Writ of Certiorari Denied Jan. 28, 1946.
See 66 S.Ct. 486.

Ernest H. Oliver, of Washington, D. C., with whom Walter G. Moyle, of Washington, D. C., was on the brief for appellants.

Ernest F. Hom, Principal Attorney, Office of the Solicitor, Department of the Interior, of the Bar of the Supreme Court of California, of Washington, D. C., pro hac vice, by special leave of court, with whom Mr. Harry M. Edelstein, Assistant Solicitor, of Washington, D. C., was on the brief, for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

GRONER, C. J.

Suit in this case was begun in the District Court May 31, 1944, to obtain a judgment vacating and setting aside a decision of the Commissioner of the General Land Office, affirmed by the Secretary of the Interior, cancelling an oil and gas lease issued to Peterson, one of appellants. The facts are these:

Under the Mineral Leasing Act of February 25, 1920,[1] Peterson, on his application filed August 24, 1926, was on November 26, 1929, issued a permit to prospect for oil and gas on certain Wyoming lands belonging to the United States. In August, 1937, Peterson entered into an operating agreement with his co-appellant, Midwest Holding Company, a Montana corporation, for the development of this permit. Following this, in September, 1937, Midwest executed an agreement, styled "Assignment," with Sha-Wa Petroleum Corporation, of New York, assigning to the latter all of its right, title and interest in and to the operating agreement with Peterson. Both Peterson's agreement with Midwest and the latter's agreement with Sha-Wa were filed with the Department. In 1938 Sha-Wa made application to the Department for a lease.

[1] 41 Stat. 437, 30 U.S.C.A. § 181 et seq.

of the lands under the Peterson permit. The application was granted December 31, 1938, and a lease for five years was executed to and *in the name of Peterson.* The lease stipulated the payment of a cash rental of 25 cents per acre, payable in advance on January 1st of each year, beginning with the third year, that is, on January 1, 1941.

This controversy arose out of the failure and default in the payment of the rent as stipulated.

Under Peterson's agreement with Midwest, the latter was authorized to enter upon the lands and prospect for oil and gas, was required to pay costs and expenses of development, including rentals and royalties due the United States, and to pay Peterson seven and one-half per cent of production where the Government royalty did not exceed five per cent, and two and one-half per cent of production where that item was more than five per cent. Peterson reserved the right of cancellation and re-entry for failure on the part of Midwest to comply with its contract and the provisions of the Government permit.

Under the agreement with Sha-Wa to do the exploration work, the latter was to pay Midwest a rental or royalty out of the production of oil and gas if and when obtained. Midwest, as in the case of Peterson, reserved the right of cancellation upon default by Sha-Wa.

In March, 1941, Midwest obtained judgment in a State court in Montana against Sha-Wa, cancelling and annulling the contract between those two corporations on the ground of breach of contract.[2] On the following June 12th the Register of the Land Office at Cheyenne, Wyoming, sent appellant Peterson notice by registered mail of the nonpayment of the rental due the previous January 1, and advised him that the lease would be recommended for cancellation unless payment were made within thirty days. Peterson, relying upon his operating agreement with Midwest, notified it of the default and demanded payment by it of the 1941 rental then past due; but the rent continuing in default, the Commissioner of the General Land Office on December 30, 1941, cancelled the lease; and on appeal to the Commissioner, and subsequently to the secretary of the Interior, his action was approved and affirmed.

The basis of the present suit is that notice of cancellation was not given to Midwest within the terms of Section 17 of the Mineral Leasing Act, as amended by Act of August 21, 1935.[3] This Act authorizes cancellation of a lease for violation of any of its provisions after thirty days' notice, and requires that notice of proposed cancellation "shall be sent to the *lease owner* by registered letter directed to the lease owner's record post-office address" (emphasis supplied).

Appellants accordingly state the question for decision to be whether Midwest is the "lease owner" to whom notice was required to be given within the intent of the statute.[4]

The answer is not wholly without doubt, but upon careful consideration of the wording of the Act and the administrative procedure under it, we have concluded that the determination should be in favor of the position taken by the Department. The term "lease owner" was doubtless used in the present statute as a convenient form of covering not only the lessee, but assignees or purchasers, or, perhaps also, a person claiming by operation of law, and

[2] Appellees argue that the Montana decree operated in personam without effect upon the title in Wyoming and accordingly that Midwest, no longer having an interest in the lands, may not complain of the cancellation. But, in the view we take, this question need not be considered.

[3] 49 Stat. 674, 30 U.S.C.A. § 226.

[4] "* * * Any lease issued after August 21, 1935 under the provisions of this section, * * * shall be subject to cancelation by the Secretary of the Interior after thirty days' notice upon the failure of the lessee to comply with any of the provisions of the lease, * * *. Such notice in advance of cancelation shall be sent the lease owner by registered letter directed to the lease owner's record post-office address, and in case such letter shall be returned as undelivered, such notice shall also be posted for a period of thirty days in the United States Land Office for the district in which the land covered by such lease is situated, or in the event that there is no district land office for such leased land, then in the post office nearest such land. Leases covering lands known to contain valuable deposits of oil or gas shall be canceled only in the manner provided in section 188 of this title." 49 Stat. 674, 678, 30 U.S.C.A. § 226.

in that view we are brought to the question—was Midwest on the day of notice of cancellation and by virtue of its written agreement with Peterson the party expressly required to be notified by the Department in the manner provided by the statute before the proposed cancellation should become effective?

The position of the Department is that the operating agreement between Peterson and Midwest did not constitute an assignment or transfer of the lease so as to constitute Midwest a "lease owner" under the Act; and, as we have already stated, we think this position correct. Midwest, however, insists that the Department's position now is inconsistent with its rulings in relation to the question as applied in other cases, and likewise that it is in conflict with decisions of various courts in the construction of more or less similar statutes relating, as we conclude in an examination of them, particularly to the question of taxable interests. Shortly stated, its position is that the agreement in issue between Peterson and Midwest was to all intents and purposes an assignment under which Peterson retained only a contingent royalty interest and Midwest obtained all rights or estate granted to Peterson and became in fact the real party in interest.

The administrative rulings on which Midwest relies were issued under the provisions of the Mineral Leasing Act as originally enacted and under which the Department, when cancellation of an exploration permit was proposed, was compelled to have recourse to the courts. The amended Act[5] provides for direct action by the Department following a thirty-day advance notice to the "lease owner." Moreover, the rulings on which appellants rely were made in construing Section 27 of the original Act, which prohibits any person, association or corporation from holding at one time more than three oil and gas leases in any one State; and these rulings were to the effect that an operator under a working agreement in full control of a permit, whose lessor had reserved an unspecified royalty, would, under the prohibitions of Section 27, have such an interest as would violate that provision. A careful consideration of these administrative rulings satisfies us that they have no relevancy to the issue here. And this brings us back to the question—did Pe-

terson's operating agreement with Midwest make that Company, within the contemplation of the 1935 amendment, the lease owner?

■ An examination of the operating agreement between Peterson and Midwest shows that it is certainly not technically an assignment, and if it is an assignment at all, it is so only to the extent to which it transfers Peterson's interest to Midwest. But, on the other hand, the agreement contemplates that Peterson should all the while remain clearly in the picture and should, in his own name, make application for such relief from the Department as should be necessary in the protection of the rights granted under the permit. It was clearly intended that any future lease or leases arising out of the permit should be taken in his name. He reserved the right to cancel the agreement with Midwest for failure on the part of the latter to comply with its terms; he reserved the right to examine and inspect the operations and the records of production. In short, Peterson's agreement with Midwest followed pretty well the standard form of oil and gas leases wherein the owner, though parting with the right of exploration, retains an overriding royalty interest.

Following this rule, the Department construed the working agreement with Midwest as a sublease and not an assignment and in the opinion affirming the Land Office, the Secretary said: "In the eight years which have elapsed since this statute was enacted [amendment of 1935], several thousand oil and gas leases have been canceled pursuant to the authority granted therein. In all these cases, the Land Office has sent notice of cancellation to only the record title holders." The reasonableness of this ruling is apparent, for if we were to accept appellant's contention that lease owner was intended "to include anyone with an interest in the leasehold" acquired with the Department's knowledge and approval, the Department would be required in every instance to examine all interests held in leases to determine to whom notice should be given, a situation which would be burdensome, if not impossible, to comply with in cases of overriding royalty interests where certain rights are transferred and other rights reserved by half a dozen or more different interests in the same lease.

---

5 Ibid.

In the circumstances, our conclusion is that the Department's notice to Peterson was all that the Act required.

■ Moreover, it may properly be noted that the Secretary found that Midwest had received *actual* notice of the proposed cancellation from Peterson. (It is not argued that this finding lacks evidence to support it). The result here might thus have been avoided but for appellant's own continuing neglect to perform its contract with Peterson promptly to pay the rent. It ought not now be permitted to complain that it was prejudiced because of the form or manner in which it received the notice.

We have examined the other points raised by the appellants and find them to be without merit.

Affirmed.